**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **AED EL-SABA,** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | |
| **v.** | * | **CIVIL ACTION NUMBER:** |
| | * | **1:15-CV-00087-KD-N** |
| **UNIVERSITY OF SOUTH ALABAMA,** | * | |
| | * | |
| **Defendant.** | * | |

<u>**REPORT OF PARTIES' PLANNING MEETING**</u>

Pursuant to Fed. R. Civ. P. 26(f) and this Court's Preliminary Scheduling Order (Doc. 22), a telephonic meeting[1] was held on September 25, 2015 between:

J. Courtney Wilson for Plaintiff Aed El-Saba, and

Windy C. Bitzer for Defendant University of South Alabama.

The parties continued discussions until the date of filing this report.  The parties believe a conference with the Court before entry of the scheduling order may be helpful.

1.        <u>**Plaintiff's brief narrative statement of the facts and causes of action:**</u>

Dr. El-Saba, of Lebanese origin and formerly a professor in the Electrical and Computer Engineering ("ECE") Department of the College of Engineering, claims that he was terminated for reasons of national origin animus and retaliation on the part of Dean Steadman, head of the College of Engineering.  He was terminated on August 20, effective August 15, after an appeal to Dean Steadman, on October 1, 2013.  He was 52 years old at the time and earning at least $76,600/yr.

---

[1] Mr. Wilson's office is located in Metairie, Louisiana, more than 100 miles away, so the conference was held by telephone.

Evidence of national origin animus consists of at least:

    a.      Steadman's remarks about wanting to "change the demographics of" the ECE Department (2006-07);

    b.      His several statements indicating a preference for hiring native-born applicants (2007-08); and

    c.      His imposition of several policies that disfavored foreign-born applicants (2008).

Evidence of retaliatory animus consists of at least:

    a.      Steadman's expressing dissatisfaction on at least one occasion (May 2006) with plaintiff's complaints of perceived discrimination;

    b.      Approximately four months after plaintiff complained about Steadman's policy to exclude H1B visa applicants, Steadman reduced plaintiff's request for dental leave, then, at the end of the academic year (May 2009), refused to take his leave into account when evaluating his performance for the year which resulted in a less favorable evaluation;

    c.      The semester after plaintiff gave his first statement to the EEOC, Steadman, cancelled without explanation, an award for which plaintiff was the only nominee, then, after plaintiff complained of this, told chairman Alam: "I'll make it so tough on him he'll have to resign" (2010);

    d.      Steadman's approving Plaintiff's regular Friday absence to care for his wife only on condition of a 20% pay reduction (2011); and

    e.      Steadman intervened in plaintiff's 2013 request to extend his medical leave for one year, after Alam had originally granted it.

Given plaintiff's age, damages for lost wages for plaintiff's work life expectancy are appropriate.  He seeks damages for emotional distress.

**<u>Defendant's brief narrative statement of the facts and defenses:</u>**

Defendant The University of South Alabama does not discriminate in its employment actions on the basis of national origin or any other protected status.  The University did not discriminate against El-Saba on the basis of his national origin (Lebanese) or any other protected class, nor did the University retaliate against El-Saba. The University denies having committed any unlawful act in violation of Title VII (42 U.S.C. § 2000e, et seq.), as amended.

El-Saba began employment in the University's College of Engineering (COE) in 1999. Dr. Steadman became employed as Dean of the COE in 2004. Steadman recommended tenure for El-Saba in spring 2005, and tenure was granted during summer 2005.  El-Saba took numerous leaves of absences, including in 2008, 2011, and the 2012-2013 academic year, for which Steadman recommended approval. In July 2013, El-Saba requested another one-year leave of absence, though he did not provide any medical documentation to the University until on or after August 13, 2013, just two days before all faculty members were required to report for duty for the fall semester. It was understood that El-Saba was in Dubai at the time and had booked no travel to return to the United States for the start of work on August 15, 2013.  El-Saba was deemed "fit to resume routine work" by his doctor and had no travel restrictions. Rather than reporting to work on the first day of faculty responsibility, El-Saba remained out of the country. El-Saba admitted in a meeting with Steadman and Dr. Johnson in September 2013 that he could have reported for duty in August. Because he did not report to work, El-Saba was deemed to have resigned and his employment was terminated. That employment action was not motivated by any discriminatory animus and had nothing to do with El-Saba's alleged complaints that

Steadman was a racist, the most recent of which allegedly occurred at least two years prior. There is no causal connection between El-Saba's alleged protected activity and his employment termination.

The University reserves the right to assert all defenses in its Answer. The University asserts that any recoverable damages are limited by the provisions of 42 U.S.C. §1981a(b) and that it has not engaged in any conduct that could support any award of compensatory or punitive damages and/or entitle El-Saba to any relief against it.

2.      This action should be ready for trial by **December 2016** and at this time is expected to take approximately three days.[2]

3.      The parties request a pretrial conference in **November 2016**.

4.      Discovery Plan. The parties jointly propose to the Court the following discovery plan:

> a.      Discovery will be needed on Plaintiff's allegations and claims of national origin discrimination and retaliation and Defendant's defenses to same. Defendant submits that discovery concerning alleged discriminatory or unfair treatment by Steadman against persons other than Plaintiff should be disallowed. Plaintiff submits that such discovery should be barred only as to Adams and Alkhatib but not as to Alsharif and Russ (paras. 26-34) or as to any others who might be comparable, *e.g.,* Thomas (para. 78).
>
> b.      All discovery commenced in time to be completed by **June 17, 2016**.

---

[2] Plaintiff has not made a jury demand. (*See* Doc. 1, ¶ 95.)  Defendant is considering whether it will demand a jury.

      c.      All motions to compel to be filed no later than 30 days before the

discovery deadline, except for those discovery issues arising after such

date.

5.      Initial Disclosures: The parties will exchange by **October 19, 2015** the

information required by Fed. R. Civ. P. 26(a)(1).

6.      The parties request until **December 1, 2015** to join additional parties and amend

the pleadings.

7.      Reports from retained experts, if any, under Rule 26(a)(2) due:

from Plaintiff by **April 6, 2016**;

from Defendant by **May 6, 2016**.

8.      Pretrial Disclosures. Final lists of witnesses and exhibits under Rule 26(a)(3) due

with the pretrial document.

9.      Discovery Limits.

Maximum of **25** interrogatories by each party to any other party.  Responses due **30** days

after service.

Maximum of **10** depositions by the Plaintiff and **10** by Defendant.  Each deposition

limited to maximum of **seven** hours unless extended by agreement of the parties.

Maximum of **30** requests for admission by each party to any other party.  Responses due

**30** days after service.

Maximum of **30** requests for production of documents by each party to any other party.

Responses due **30** days after service.

Supplementation under Rule 26(e) shall be due in a timely manner.

10.      All potentially dispositive motions filed by **July 18, 2016**.

11.     Settlement cannot be evaluated until after a reasonable discovery period.  The parties are willing to consider a magistrate judge led settlement conference at that time.

12.     The discovery in this action may include Electronically Stored Information (ESI). To the extent it exists, relevant non-privileged electronic information will be provided by the parties in searchable PDF or hard copy format, to enable the parties to exchange discoverable information without undue burden or costs.  A requesting party may obtain relevant, non-privileged electronic information in a format other than PDF or hard copy only upon agreement of the parties or a showing of substantial need to the Court for such consideration in that format.

13.     Other matters.  The parties will address issues of privilege or protection of trial-preparation material as needed during discovery.  If claiming a privilege to a document, the party will produce a privilege log.  If the parties cannot reach a reasonable agreement on these issues, they may request the Court's intervention.

The parties acknowledge that regardless of a producing party's diligence, an inadvertent production of attorney-client privileged or attorney work product materials may occur. In accordance with Fed. R. Civ. P. 26(b)(5) and Fed. R. Evid. 502, they agree that if a party through inadvertence produces discovery that it believes is subject to a claim of attorney-client privilege or attorney work product, the producing party may give written notice to the receiving party requesting that the document or thing be returned to the producing party or destroyed. The receiving party shall return or destroy such document or thing, which shall not constitute an admission or concession document or thing is properly subject to a claim of attorney-client privilege or attorney work product, unless within 10 days of receiving the notice, it files a motion for an in-camera review by the Court to determine whether the designation is proper. Nothing in this paragraph should be treated as foreclosing a party from later moving the Court pursuant to

Fed. R. Civ. P. 26(b)(5) and Fed. R. Evid. 502 for an Order that such document or thing has been improperly designated or should be produced.

Respectfully submitted this 28th day of September, 2015.

For Plaintiff:

By: /s/ J. Courtney Wilson, by consent

J. Courtney Wilson
(admitted *pro hac vice*)
J. COURTNEY WILSON
1510 Veterans Boulevard
Metairie, LA  70005
Telephone:     (504) 832-0585
Fax:               (504) 846-2400
Email:           cwilson@courtlaw.net

For Defendant:

By:  /s/Windy C. Bitzer

Windy C. Bitzer (BITZ7315)
Christine Harding Hart (HARTC5687)
HAND ARENDALL LLC
RSA Tower, Suite 30200
11 North Water Street
Mobile, Alabama 36602
Post Office Box 123
Mobile, Alabama 36601
Telephone: (251) 432-5511
Fax: (251) 694-6375
wbitzer@handarendall.com
chart@handarendall.com