IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| AED EL-SABA, | * | |
| | * | |
| Plaintiff, | * | |
| | * | CIVIL ACTION NUMBER: |
| v. | * | 1:15-CV-00087-KD-N |
| | * | |
| UNIVERSITY OF SOUTH ALABAMA, | * | JURY TRIAL DEMANDED |
| | * | |
| Defendant. | * | |

## ANSWER

Defendant University of South Alabama ("the University" or "USA") answers plaintiff's Complaint, as limited by this Court's Order of October 7, 2015 (Doc. 32), the Report of Parties' Planning Meeting (Doc. 27) and the Scheduling Order (Doc. 31), as follows:

### Jurisdiction and Venue

1.     Defendant admits that the remaining claims are brought under Title VII of the Civil Rights Act of 1964 and jurisdiction is acknowledged under 28 U.S.C. § 1343. Defendant also admits that venue is proper in this District. Otherwise denied and no further response is required pursuant to the Court's order dated October 7, 2015.

### Parties

2.     Admitted that the University of South Alabama is a named defendant. Upon information and belief, admitted as to plaintiff's stated personal information.

### Right to Sue

3.     Admitted that the EEOC issued a right-to-sue letter dated November 24, 2014 pertaining to plaintiff's Title VII charge. Otherwise denied and no further response is required

pursuant to the Court's order dated October 7, 2015. Plaintiff's Rehabilitation Act claim for failure to accommodate has been dismissed.

## Introduction

4. Admitted that Dr. John Steadman became Dean of the College of Engineering in 2003. Admitted that Dr. Mohammad Alam served as Chair of the Department of Electrical and Computer Engineering ("ECE") from May 15, 2001 to August 14, 2015. Admitted that Dr. David Johnson has served as Senior Vice President for Academic Affairs from January 1, 2009 to the present.

5. There is no paragraph 5 in the Complaint.

6. Admitted that James Laier has been Associate Dean of the College of Engineering from August 15, 2009 to the present.

7. Admitted that Martin Parker, now retired, was a full professor in the ECE Department and served on the College Tenure and Promotion ("T&P") Committee, but as the ECE representative, not as the Dean's representative for the time believed to be at issue. Admitted that Parker served on the ECE Department T&P Committee. Admitted that Parker served on the Excellence in Research Award Committee as a former recipient, but not as the department representative. Otherwise denied.

8. Admitted that at a College meeting in or about 2006 Steadman was asked to leave the meeting, and that after the meeting Steadman was notified that a vote of no confidence had been taken. Otherwise denied.

9. Denied.

10. Denied.

10a. Denied.

     10b.    Admitted that there have traditionally been more non-native applicants for ECE faculty positions than native applicants. Otherwise denied.

     10c.    Denied.

     10d.    Denied.

     10d.[1]    Denied that Sam Russ was Chairman of the Search Committee. Denied that Steadman received meeting minutes from the ECE faculty meeting. Admitted that ECE faculty meeting minutes from February 11, 2010, reflect a question by plaintiff regarding H1B visa candidates. Otherwise denied.

     11.    Admitted that plaintiff submitted a request for leave on July 24, 2008, to start August 15, 2008 and end November 15, 2008, so that he could receive dental treatment. On August 16, 2008, he amended the dates of his leave request, to take place from August 17, 2008 to October 20, 2008. Admitted that plaintiff met with Steadman and with USA's benefits coordinator regarding his leave request, and that plaintiff was approved for medical leave for the period from August 22, 2008 until October 22, 2008, with 20 days allocated as medical leave with pay and the remaining workdays allocated as leave without pay. Admitted that Alam emailed plaintiff on October 20, 2008, asking plaintiff to let the ECE office know when he would report back to work. Otherwise denied.

     12.    Admitted that plaintiff provided paperwork to support his leave request as required by University processes. Otherwise denied.

     13.    Admitted that because of his leave plaintiff did not teach courses during the fall 2008 semester and others assumed his teaching load. Admitted that plaintiff returned from leave

---

[1] There are two paragraphs labeled "10d." in the Complaint. (Doc. 1, pp. 3-4.) Defendant answers each paragraph in the order it was pleaded in the complaint.

3

on or about October 22, 2008 and for the remainder of the fall semester was engaged in advising, supervising graduate student work, and similar activities.

14.     Admitted that Alam evaluated plaintiff in 2009 for the 2008-2009 academic year, including all the time he was actively working and not on medical leave. Admitted that Steadman, after consultation with Johnson, instructed Alam that this was the proper period of time for the evaluation. Admitted that plaintiff did not sign his 2009 evaluation form. Otherwise denied.

15.     Admitted that Alkhatib resigned effective July 30, 2008, and that he requested that his resignation be withdrawn, which was denied. Admitted that Alkhatib filed an EEOC charge. Defendant has no knowledge of whether plaintiff gave a statement to the EEOC in connection with Alkhatib's charge and therefore denies the same.

16.     Denied.

17.     Admitted.

18.     Admitted generally that the Award Committee's discussions, including the nominees, are considered confidential. Denied that Parker and Steadman discussed any inquiry by plaintiff regarding award nominees. Defendant lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph concerning a discussion between plaintiff and Parker, and therefore denies the same.

19.     Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph, and therefore denies the same.

20.     Admitted that the "Excellence in Research Award" was not awarded in 2010. Otherwise denied.

21.     Denied.

4

22. Denied.

23. Admitted that plaintiff met with Jean Tucker, University counsel, on March 26, 2012, and expressed concern that the Excellence in Research Award was not awarded in 2010. Otherwise denied.

24. Denied.

25. Upon information and belief, admitted that plaintiff's wife had health issues, but the details and timing of any diagnosis are not known and are therefore denied.

26. Admitted that Alsharif and Russ applied for tenure and promotion during the 2010-2011 academic year. Upon information and belief, Alsharif is non-native born and Russ is native born. Defendant lacks knowledge regarding Alsharif's naturalization status and therefore denies the same.

27. Admitted that the ECE Department T&P Committee originally voted to offer Alsharif tenure by a vote of 7 to 0, but after a vote change, the vote was 6 to 1 in favor of offering tenure. Admitted that the ECE Department T&P Committee voted to offer Russ, a native-born American, tenure by a vote of 6 to 1. Otherwise denied.

28. Admitted that Parker indicated that he would like to change his vote on tenure for Alsharif.

29. Admitted that with Parker's change, the final vote of the ECE T&P Committee was 6 to 1 in favor of offering tenure to Alsharif, with Parker as the one vote against.

30. Admitted that department records reflect that plaintiff did not agree that Parker should be allowed to change his vote. Otherwise denied.

31. Admitted that the ECE T&P Committee voted against promotion of Alsharif, and in favor of promotion of Russ. Otherwise denied.

32. Admitted that the College T&P Committee reviewed the applications of Alsharif and Russ for tenure and promotion. Admitted that, generally speaking, four members of the College T&P Committee are selected by the four Departments for two years and three other members are selected by the Dean. Admitted that Parker was a member of the College T&P Committee but he was not the Dean's appointee at the time at issue. Otherwise denied.

33. Admitted that the College T&P Committee's vote was 5 to 2 against offering Alsharif tenure and 6 to 1 against promotion. Otherwise denied.

34. Admitted that Russ was awarded tenure and promotion effective August 15, 2011. Otherwise denied.

35. Admitted that Alsharif submitted an EEOC charge in October 2011, identifying Russ therein. Otherwise denied.

36. Defendant has no knowledge of whether plaintiff gave a statement to the EEOC in 2011 in connection with Alsharif's charge and therefore denies the same. Denied that Alsharif filed a federal complaint.

37. Denied.

38. Admitted that plaintiff took intermittent family/medical leave on Fridays during fall semester 2011, to care for his spouse, beginning August 26, 2011 through November 15, 2011. Admitted that plaintiff's accrued sick leave was applied and the remaining absences were unpaid consistent with University policy. Otherwise denied.

39. Defendant lacks knowledge as to when plaintiff had his first heart attack and therefore denies the same. Defendant lacks knowledge as to plaintiff's criticisms of the Dean and/or their frequency and therefore denies the same. Denied that Alsharif's lawsuit proceeded, as there was no lawsuit against the University.

40. Admitted that in 2012 plaintiff requested leave to care for his own health and for his spouse. Plaintiff was on family/medical leave from August 15, 2012 to November 12, 2012, and on personal leave from November 13, 2012 until May 15, 2013.

41. Denied. Leave requests are approved by the Senior Vice President for Academic Affairs.

42. Denied.

43. Admitted that Alsharif resolved his EEOC charge in February 2012. Otherwise denied.

44. Admitted that plaintiff was on leave during the 2012-2013 academic year without pay, and that plaintiff and Steadman did not communicate during that time. Otherwise denied.

## Count I – Retaliatory Termination

45. Upon information and belief, admitted that plaintiff experienced a health situation in Dubai in summer 2013. Admitted that on July 22, 2013, plaintiff requested an unpaid leave of absence for the following academic year, until May 15, 2014. Otherwise denied.

46. Upon information and belief, admitted that plaintiff received medical treatment in Dubai. Otherwise denied for lack of knowledge.

47. Upon information and belief, admitted that plaintiff received medical treatment in Dubai. Otherwise denied for lack of knowledge.

48. Upon information and belief, admitted that plaintiff received medical treatment in Dubai and follow-up appointments were recommended. Otherwise denied for lack of knowledge.

49. Upon information and belief, admitted that plaintiff received medical treatment in Dubai and follow-up appointments were recommended. Otherwise denied for lack of knowledge.

50. Admitted that plaintiff emailed Alam on July 22, 2013, requesting another leave of absence until May 15, 2014. Otherwise denied.

51. Admitted that on July 22, 2013, plaintiff emailed Alam requesting a leave of absence until May 15, 2014. Admitted that on August 2, 2013, plaintiff emailed Steadman and stated that if he needed to modify his request for a shorter period of leave, until January 2, 2014, he could do so, pending medical advice. Otherwise denied.

52. Admitted that Alam sent a memorandum to Steadman on July 22, 2013, attaching the email plaintiff sent Alam that same day requesting leave. Admitted that Steadman informed plaintiff via email on August 1, 2013 that he could not approve of a leave lasting until May 15, 2014 due to staffing needs. Steadman informed plaintiff that he needed to know within 24 hours whether plaintiff intended to be present by August 15, 2013 for the beginning of the fall semester. Plaintiff emailed Steadman on August 2, 2013 stating that it was a national holiday and it would not be possible to obtain medical advice as to whether he could return to work. Otherwise denied.

53. Upon information and belief, admitted that the email exchanges between Steadman and plaintiff in August 2013 were the first direct communications they had exchanged in over a year, since plaintiff was on approved leave for the 2012-2013 academic year.

54. Admitted that on August 2, 2013, plaintiff emailed Steadman and stated that if he needed to modify his request for a shorter period of leave, until January 2, 2014, he could do so, pending medical advice.

8

55. Admitted that on August 2, 2013, Steadman emailed plaintiff stating he would be out of the office from August 3, 2013 until August 13, 2013, and Steadman would obtain direction from Academic Affairs about who plaintiff should contact regarding his request for leave. Defendant is without knowledge as to whom plaintiff assumed that person would be, therefore denied.

56. Admitted that on August 5, 2013, plaintiff emailed Steadman, copying Alam, Laier, and Johnson, stating he was not restricted from travelling but was to "strictly guard" all of his appointments "(with [the] same doctor (strongly recommended)" that was monitoring plaintiff. Admitted that plaintiff also stated he would not be available by August 15th but would be available shortly after his second doctor's appointment on November 11, 2013. Otherwise denied.

57. Admitted that on August 6, 2013, Johnson emailed plaintiff, copying Steadman, Alam, and Laier, reiterating that due to staffing needs, plaintiff's request for a one-year leave of absence was not granted. Admitted that Johnson also stated that, in order for him to consider plaintiff's request for leave for fall semester, Johnson needed plaintiff to provide a statement from his physician by August 12, 2013 that plaintiff would be able to return to work on January 2, 2014.

58. Admitted that on August 7, 2013, plaintiff emailed Johnson, copying Steadman, Alam, and Laier, stating he would be ready to return to work by January 2, 2014, and he would contact his doctor when he returned from holiday on August 12 to have him write a letter as Johnson requested.

59. Admitted that on August 13, 2013, plaintiff emailed Johnson, copying Steadman, Alam, and Laier, attaching a sick leave certificate signed by a doctor stating that plaintiff "is fit

9

to work from 01-01-2014." Admitted that plaintiff stated a second letter with more details would be available within 48 hours.

60.     Admitted that on August 15, 2013, plaintiff emailed Johnson, copying Steadman, Alam, and Laier, attaching additional medical documents, including a statement that plaintiff "is fit to resume his normal work."

61.     Admitted that on August 20, 2013, Steadman emailed plaintiff stating that the medical report stated that plaintiff was "fit to resume [your] routine work" and since plaintiff was fit to resume work and had no travel restrictions, a leave of an entire semester appeared unnecessary and would not be considered reasonable. Admitted that Steadman stated in his August 20 email that because plaintiff did not report to work on August 15, 2013 and his request for leave was not granted, it was understood that plaintiff would not be performing his faculty duties and was deemed to have resigned from his position at the University.

62.     Denied.

63.     Admitted that on August 26, 2013, plaintiff emailed Johnson, copying Steadman, Alam, and Laier (but directing his email to Steadman), stating he would be available to meet Steadman, Alam, and Johnson (if necessary) when he planned to visit the United States after his September 2, 2013 appointment. Admitted that plaintiff met with Steadman and Johnson at the University on or about September 19, 2013. Defendant is without knowledge or information regarding the remaining allegations in this paragraph and therefore denies the same.

64.     Denied that in the meeting, plaintiff explained that the doctor who wrote the second letter had not known that plaintiff would be working in America. Admitted that on October 1, 2013, Steadman sent an email to plaintiff, copying Johnson, Jennifer Averitt, and Alam, informing plaintiff that he and Johnson reviewed the medical statements and based on that

information it was clear that plaintiff was able to return to work on the first day of classes and could have performed his duties as of that date, and because he was not approved for leave at that time and did not otherwise qualify for the leave requested, plaintiff was deemed to have resigned his position at the University. Steadman also mailed plaintiff a letter via registered mail stating the same on October 1, 2013. Otherwise denied.

65. Denied.

66. Defendant incorporates its answers to paragraphs 8, 9, 10a, 11, 15, 17-22, 36, and 38 of the complaint. Defendant denies there were any protected complaints followed by retaliation.

### Count II – Termination by Resignation Because of National Origin

67. Denied.

68. Denied.

69. Denied.

70. Denied.

71. Upon information and belief, admitted generally that there has been a higher ratio of non-native applicants to native applicants for faculty positions in the ECE Department and that the Short List was never (at least since 2003) composed entirely of native-born applicants. Otherwise denied for lack of specificity.

72. Denied. In 2007, the ECE Faculty Search Committee did not rank the candidates for two temporary faculty positions.

73. Admitted that Steadman requested the Short List be forwarded without ranking, though the year of such request is unknown and therefore denied.

74. Denied.

11

75. Admitted that Brothers declined employment. Otherwise denied.

76. Admitted that in spring 2008 Brothers was on the Short List, interviewed, and was recommended for a faculty appointment in the ECE Department, but decided to go elsewhere. Otherwise denied.

77. Denied that Brothers received less than favorable student evaluations. Admitted that Steadman did not persuade Brothers to remain at the University. Otherwise denied.

78. Upon information and belief, admitted that Thomas was the only native-born ECE faculty member when Steadman arrived at USA. Admitted that Thomas was hired on August 15, 1998, one year before plaintiff. Denied that Steadman gave raises; department chairs are primarily responsible for recommending salary increases. Admitted that as of 2009, Thomas' salary was $93,444 and plaintiff's was $76,057. Otherwise denied.

79. Defendant adopts and incorporates its answers to paragraphs 26-37 of the Complaint as if fully set forth herein.

80. Denied.

81. Pursuant to the Court's Order of October 7, 2015 (Doc. 32), the Report of Parties' Planning Meeting (Doc. 27) and the Scheduling Order (Doc. 31), Defendant is not obligated to admit or deny the allegations of this paragraph.

82. Pursuant to the Court's Order of October 7, 2015 (Doc. 32), the Report of Parties' Planning Meeting (Doc. 27) and the Scheduling Order (Doc. 31), Defendant is not obligated to admit or deny the allegations of this paragraph.

83. Pursuant to the Court's Order of October 7, 2015 (Doc. 32), the Report of Parties' Planning Meeting (Doc. 27) and the Scheduling Order (Doc. 31), Defendant is not obligated to admit or deny the allegations of this paragraph.

84. Admitted that Steadman informed plaintiff on August 20, 2013 that he was deemed to have resigned for failing to report to work as required on August 15, 2013 and because plaintiff's request for leave had been denied due to the fact that plaintiff was "fit to resume his normal work." Otherwise denied.

85. Admitted that Steadman informed plaintiff on August 20, 2013 that he was deemed to have resigned for failing to report to work as required on August 15, 2013. Otherwise denied.

86. Admitted that Steadman construed plaintiff's failure to return to work on August 15, 2013, though fit to do so, as a resignation. Otherwise denied.

87. Denied.

88. Denied.

### Count 3 – Failure to Accommodate Under Sec. 504 of the Rehabilitation Act of 1973

89. This Count has been dismissed and no response to this paragraph is therefore required.

90. This Count has been dismissed and no response to this paragraph is therefore required.

91. This Count has been dismissed and no response to this paragraph is therefore required.

92. This Count has been dismissed and no response to this paragraph is therefore required.

93. This Count has been dismissed and no response to this paragraph is therefore required.

94. This Count has been dismissed and no response to this paragraph is therefore required.

**Relief Sought**

95. Defendant denies that Plaintiff is entitled to any relief of any sort against it.

**DEFENSES**

FIRST DEFENSE

Plaintiff's Complaint and each count or claim therein fails to state a claim upon which relief may be granted.

SECOND DEFENSE

Any allegation not specifically admitted herein is denied.

THIRD DEFENSE

Plaintiff's Rehabilitation Act claim (Count III) was dismissed pursuant to the Court's Order dated October 7, 2015.

FOURTH DEFENSE

Defendant preserves the affirmative defense that plaintiff's claims may be barred in whole or in part by applicable statutes of limitations, and/or the doctrines of waiver, estoppel, and/or laches.

FIFTH DEFENSE

Defendant preserves the affirmative defense that plaintiff's claims may be barred in whole or in part by his unclean hands and/or to the extent his claims were fraudulently brought.

SIXTH DEFENSE

Plaintiff's Title VII claims are barred by his failure to exhaust administrative remedies.

## SEVENTH DEFENSE

Defendant preserves the affirmative defenses that plaintiff may not challenge in this lawsuit any acts or omissions first occurring more than 180 days prior to the filing of any charge of discrimination with the EEOC and may not pursue any claims exceeding the scope of that charge.

## EIGHTH DEFENSE

Some or all of plaintiff's claims may be barred in whole or in part by the doctrine of after-acquired evidence.

## NINTH DEFENSE

Plaintiff's claims for relief are barred by his failure to make reasonable efforts to mitigate his damages, if any.

## TENTH DEFENSE

Any recoverable damages under plaintiff's Title VII claims are limited by the provisions of 42 U.S.C. § 1981a(b).

## ELEVENTH DEFENSE

Plaintiff's claims are barred in whole or in part because defendant performed all legal and ministerial duties, if any, owing to plaintiff.

## TWELFTH DEFENSE

Plaintiff cannot prove causation.

### THIRTEENTH DEFENSE

Defendant pleads the "same decision" defense. While defendant denies any improper motive, defendant states that it would have made the same employment decision for non-discriminatory reasons.

### FOURTEENTH DEFENSE

Plaintiff's claims are barred because defendant had legitimate, non-discriminatory reasons for its action(s), and plaintiff cannot show pretext.

### FIFTEENTH DEFENSE

Plaintiff's claims are barred, in whole or in part, because defendant maintained an effective policy to prevent and/or promptly correct any discriminatory behavior and plaintiff unreasonably failed to avail himself of any preventative or corrective opportunities provided by defendant or to avoid harm otherwise.

### SIXTEENTH DEFENSE

Plaintiff cannot recover for mental pain and suffering, emotional distress, or similar damages, if any, because there is no fixed, objective and/or clear and consistent standard for ascertaining the amount thereof, such that any award of said damages against defendant would violate the Fifth and Fourteenth Amendments to the United States Constitution.

**DEFENDANT DEMANDS A TRIAL BY JURY.**

Respectfully submitted,

/s/ Windy C. Bitzer
WINDY C. BITZER (BITZ7315)
CHRISTINE HARDING HART
(HARTC5687)
HAND ARENDALL LLC
Post Office Box 123
Mobile, Alabama  36601
(251) 432-5511
*Attorneys for Defendant*
*University of South Alabama*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 21, 2015, the foregoing document was filed with the Clerk of the Court using the CM/ECF filing system which will send notification of such filing to the following:

J. Courtney Wilson
1510 Veterans Boulevard
Metairie, LA  70005
cwilson@courtlaw.net

/s/ Windy C. Bitzer